IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiffs, vs. DANTE D. WILLIAMS, Defendants. | 4:19CR3011 **MEMORANDUM AND ORDER** |

Pending before me is the motion to determine Defendant Dante Williams' competency to understand the current proceedings and assist in his own defense. For the reasons stated below, the court finds Dante Williams is competent.

FINDINGS OF FACT

During the initial appearance on the underlying criminal complaint, Dante Williams was initially silent as to whether he understood the charges and possible penalties, stating only "The spirit is strong." As that hearing progressed, he was intermittently responsive to the court's questions regarding his understanding of the charges, the possible penalties, and his constitutional rights, ultimately acknowledging (either verbally or by head nods) that he understood. ([Filing No. 28](), audio file). He responded similarly during the arraignment on the indictment, necessitating a 30-minute recess of the arraignment proceeding so the defendant could confer with his court-appointed counsel. (Filing Nos. [64]() & [65](), audio files).

Over time, defense counsel became concerned that Defendant Dante Williams that not mentally able to assist in his own defense, and he appropriately raised the issue to the undersigned magistrate judge and the assigned

prosecutor. Counsel explained that during attorney/client conversations, Dante Williams' statements were, at times, not responsive to the questions or topics being discussed; that Dante Williams stated he was hearing voices. Defense counsel secured an expert to psychologically evaluate Dante Williams. The evaluation was performed on August 26, 2019 by Dr. Kirk Newring, Ph.D. (Filing Nos. [125](#) & [126](#)).

The evaluation lasted 40 minutes. Dante Williams' participation was limited. When initially asked if he would participate in the evaluation, Dante Williams did not respond for some time, then stated he would prefer to return to his cell and go to sleep. ([Filing No. 136, at CM/ECF p. 1](#)). When the evaluator reminded Dante Williams of how he responded at his initial appearance and arraignment, Dante Williams looked away, smirked, and appeared to laugh to himself. He made no audible response for over two minutes. Id.

Dante Williams did not respond to the majority of the evaluator's interview questions, but he did ask the evaluator questions on wholly unrelated issues, e.g., the evaluator's favorite cartoons and whether he had eaten at any barbeque restaurants in Kansas. ([Filing No. 136, at CM/ECF p. 2](#)). The evaluator made multiple attempts to continue the mental evaluation, but Dante Williams ended the interview by saying, "Well, that's it." When told the evaluation would end when the visitation room's intercom button was pressed, Dante Williams smiled wryly, playfully brought his hand near the intercom button, and slowly pressed it. ([Filing No. 136, at CM/ECF pp. 2-3](#)).

Dr. Newring determined Dante Williams "may have been attending to stimuli not present to the outside observer, though the nature of those stimuli were unclear." ([Filing No. 136, at CM/ECF p. 3](#)). Dr. Newring could not "rule out that Dante Williams is experiencing symptoms of a thought disorder" and could

not "rule out that Dante Williams is malingering a mental illness." Dr. Newring concluded:

> Given Mr. William's limited cooperation with this evaluation, his competency could be of question. If his participation with his counsel is consistent with what was observed in this setting with a psychological evaluation—disengaging from questioning, sustaining long periods of silence, up to 150 seconds in duration. When provided opportunities to speak, Mr. Williams did not avail himself of that opportunity. If he displays the same level of cooperation, Mr. Williams would likely not meet the standards for competency as set in <u>Dusky</u>. It is not clear to this evaluator as to if Mr. Williams is unable, unwilling, or both unable and unwilling to participate in court processes.

(Filing No. 136, at CM/ECF p. 3.) He recommended that Dante Williams be further evaluated at the Federal Medical Center.

The undersigned magistrate judge remanded Dante Williams to the Federal Medical Center to "determine whether Defendant currently has the cognitive ability, competence, and capacity to consult with counsel, understand the criminal proceedings, and participate with and assist counsel in the defense of this case." (Filing No. 145). Before Dante Williams was transported to the FMC, he mailed a letter to the undersigned magistrate judge, requesting new counsel and explaining the litigation strategy he wanted counsel to follow.[1] The statements and arguments in the letter were rational, related to litigation of this case, and evidence Dante Williams' understanding of his right to due process, to effective assistance of counsel, and to be an active participant in determining the outcome of the charges against him. (See, Filing No. 151).

The FMC psychological evaluator, Samuel Browning, Ph.D., agreed, describing the content of the letter sent to the court and requesting new counsel

---
[1] This letter was filed under seal, and it was provided to Dante Williams' counsel but not to the prosecutor.

was evidence of Dante Williams' "ability to advocate for himself and engage in appropriate decision-making and problem-solving." ([Filing No. 157, at CM/ECF p. 8](#)). In addition, during a month-long evaluation of Dante Williams, Dr. Browning and other professionals at the FMC performed, or attempted to perform, extensive testing and interviews of Dante Williams.

In his report and his testimony before the court at Dante Williams' competency hearing, Dr. Browning stated the Dante Williams explained he began hearing voices and seeing things following a concussion he sustained while playing basketball at the age of 20. ([Filing No. 157, at CM/ECF p. 5](#)). Dante Williams described his visual and auditory hallucinations in detail, but these reports were inconsistent during the evaluation. They were not reported in his Psychology Services Intake Questionnaire. ([Filing No. 157, at CM/ECF p. 5](#)). Dante Williams claimed he was receiving auditory commands, but he denied ever acting on these commands. ([Filing No. 157, at CM/ECF p. 5](#)).

Dante Williams provided inconsistent descriptions of his history and exhibited inconsistent behaviors over the course of testing sessions. He was able to remain engaged in lengthy interviews and responded to redirection. However, he was unable or unwilling to provide detailed information, he provided defensive or evasive responses to questions posed to corroborate his prior answers, often provided irrelevant answers, or attempted to redirect the interview by posing off-topic questions to the evaluator. ([Filing No. 157, at CM/ECF pp. 5-6](#)). "This type of behavior occurred at inconsistent intervals and appeared to be related to resistance with the task at hand." ([Filing No. 157, at CM/ECF p. 6](#)). As during the initial appearance and arraignment, during initial sessions, Dante Williams stared forward and sat in silence until prompted to respond. But in later sessions, he did not display these behaviors. ([Filing No. 157, at CM/ECF p. 6](#)).

Dante Williams refused to perform or resisted psychological testing, and he provided inconsistent responses to the testing he did complete. Based on his experience and the testing, Dr. Browning concluded Dante Williams' cognitive functioning was in the low average to average range or higher. ([Filing No. 157, at CM/ECF p. 7](#)). Dr. Browning determined Dante Williams was able to identify correct testing responses, but he intentionally chose not to answer some questions truthfully. "This performance suggests he either provided sub-optimal effort on competency-related items, or he was motivated to exaggerate or feign deficits in competency." ([Filing No. 157, at CM/ECF p. 7](#)).

Although generally noncompliant with testing, Dante Williams was generally "receptive and compliant with directives pertaining to behaviors that may result in disciplinary action." ([Filing No. 157, at CM/ECF p. 8](#)). In the housing unit, Dante Williams initially tested boundaries, but when his conduct was challenged, he was able to comply with verbal directives. He interacted appropriately with other inmates, and he was able to learn and use common methods to sidestep the facility's rules (e.g., using cell phones assigned to other inmates). ([Filing No. 157, at CM/ECF pp. 6-7](#)).

Dr. Browning summarized:

> Mr. Williams appears to be motivated to feign or exaggerate symptoms in an effort to affect his current legal situation in his favor. This interpretation is supported by behavioral observations and his performance on the VIP, ECST-R, and ILK, the latter of which measures exaggeration specifically as it pertains to competency and legally-based knowledge. Further, Mr. Williams' behavioral abnormalities (i.e., unusual motor movements; limited disclosure) were inconsistent throughout testing sessions, and his descriptions of psychotic symptoms changed over time. This pattern is atypical among those evincing genuine psychiatric symptoms.
>
> Prognosis is considered to be fair. Mr. Williams does not appear to

experience symptoms of a mental disease or defect. Based on psychological testing data, his symptoms appear feigned or exaggerated. Mr. Williams appears capable of understanding the nature of his charges, appreciating his legal options, and rationally assisting his counsel if he chooses to do so.

(Filing No. 157 at CM/ECF p. 10).

After returning from the FMC to the District of Nebraska, Dante Williams sent another letter to the court requesting new counsel, stating his attorney was not adequately representing him. (Filing No. 161). The court held a hearing on this motion outside the presence of the government's counsel. During that hearing, Dante Williams was able to clearly express, with detail, his expectations of counsel and how his attorney has failed to meet those expectations. (Filing No. 164, audio file).

After Dante Williams returned from the FMC to Nebraska, a competency hearing was held. Drs. Newring and Browning testified during that hearing. Their testimony was consistent with their reports and provided explanations and context to their respective written findings. Counsel for the government and Dante Williams questioned the experts, as did the court. During that hearing, the undersigned magistrate judge watched Dante Williams, noting his responses. For the vast majority of the hearing, Dante Williams stared straight ahead, said nothing, and appeared disengaged. However, when the court stated on the record that Dante Williams was questioned by the court during the hearing on appointment of new counsel, not only to assess the need for new counsel but also his ability to advocate his interests when motivated to do so, Dante Williams immediately looked directly at me with a look of both surprise and dismay.

## ANALYSIS

"A defendant is competent if he 'has sufficient present ability to consult

with his lawyer with a reasonable degree of rational understanding' and 'has a rational as well as factual understanding of the proceedings against him.'" United States v. Rickert, 685 F.3d 760, 765 (8th Cir. 2012) (quoting Dusky v. United States, 362 U.S. 402 (1960)). Defendant's behavior, demeanor, and any medical opinions on competence to stand trial are all relevant, but any one of these factors could, standing alone, support a finding of incompetence. Rickert, 685 F.3d at 765 (citing Drope v. Missouri, 420 U.S. 162, 180 (1975)).

Here, the undersigned magistrate judge has closely watched Dante Williams throughout the case, beginning with the first hearing before me. I have asked him questions, and I have solicited information from his counsel about his mental state. From those observations and inquiries, I am convinced that Dante Williams chooses when to appear incompetent; when to look and act like he is unable to effectively assist in his own defense, and that he does not understand the court's processes, his rights, and the charges and possible penalties. But when properly motivated, (e.g., when he wanted a new attorney), Dante Williams can articulate rational positions focused on the topic at hand, properly direct his requests to the court, and answer the court's questions. That motivation to cooperate was lacking during his evaluations by Drs. Newring and Browning where, consistent with his stated objection to competency testing, Dante Williams refused to complete the tests or he provided evasive or untruthful answers. To the extent he did complete evaluative testing, he intentionally attempted to skew the results and undermine the validity of the tests.

Some of the psychological testing tools used by Dr. Browning are designed to uncover when a defendant is malingering and/or feigning incompetence. The test results for Dante Williams support such a finding. After considering the court's records, the interview of defendant's counsel, the evaluation results, and the observations of the professionals and correctional staff at FMC, Dr. Browning

opines that Dante Williams is competent to stand trial. Dr. Newring neither agrees nor disagrees with that opinion. Rather, after meeting with Dante Williams for 40 minutes, Dr. Newring lacks sufficient information to formulate a reliable opinion on competency due to Williams' overall lack of cooperation, including at the FMC.

Dante Williams may have some underlying and currently unidentified mental illness. He may be hearing and seeing things; he may not be. But the question before me is whether Dante Williams has the cognitive ability and competence to consult with counsel, understand the criminal proceedings, and participate with and assist counsel in the defense of this case. He does.

Accordingly,

IT IS ORDERED:

1) Dante Williams is competent to stand trial.

2) As to all defendants, pursuant to 18 U.S.C. § 3161(h)(1)(A) & (h)(4), the time between December 28, 2018 (the first indication of potential incompetence), and today's date is deemed excludable time in any computation of time under the requirements of the Speedy Trial Act. Failing to timely object to this order excluding time will be deemed a waiver of any right to later claim the time should not have been excluded under the Speedy Trial Act.

March 16, 2020.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge