IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:19-CR-3011 |
| vs. | |
| TAWHYNE M. PATTERSON, SR., | TENTATIVE FINDINGS |
| Defendant. | |

The Court has received the revised presentence investigation report in this case. There are no motions for departure or variance. The defendant has objected (filing 773) to the presentence report.

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases.[1] In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

---

[1] Because this matter was remanded for resentencing following a direct appeal, the Court relies on the 2018 Guidelines Manual in effect on the date of the previous sentencing. 18 U.S.C. § 3742(g)(1); *see also United States v. Binkholder*, 909 F.3d 215, 218 (8th Cir. 2018).

    (b)    resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

    (c)    impose upon the United States the burden of proof on all Guidelines enhancements;

    (d)    impose upon the defendant the burden of proof on all Guidelines mitigators;

    (e)    depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

    (f)    in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2.    There are no motions that require resolution at sentencing. The defendant has objected to the grouping of Counts 2 and 3 pursuant to U.S.S.G. § 3D1.2. Filing 773. The Court will overrule the objection.

But there is some force to the defendant's argument. Section 3D1.2 provides in relevant part that

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
> **(a)** When counts involve the same victim and the same act or transaction.

> **(b)** When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>
> **(c)** When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
> **(d)** When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Subsections (c) and (d) are out of play here. The presentence report relies on subsection (a), but the Court agrees with the defendant that the two offenses don't involve the "same act or transaction." *See United States v. Winters*, 411 F.3d 967, 975 (8th Cir. 2005). That leaves subsection (b), which the Court finds applicable to these unique facts.

Counts 2 and 3 are two separate attempted Hobbs Act robberies: One committed during the early morning hours of July 30, 2018, and another during the early morning hours of July 31, 2018. The July 30 attempt was relatively uneventful, as the defendant and his associates weren't able to enter the dwelling. The July 31 attempt was calamitous, as detailed in the trial record and presentence report. But both were attempts to steal the same property from the same victim—or, to use the

language of the guideline, they were "connected by a common criminal objective or constituting part of a common scheme or plan."

The defendant, however, points to two things. The first is the prefatory language of § 3D1.2, which indicates that grouping is intended for offenses "involving substantially the same harm." The defendant also points to the commentary, which pertinently explains that subsection (b) "does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm)." *Id.*, cmt. n.4; *see also United States v. Moore*, 877 F.2d 651, 652 (8th Cir. 1989).

That's admittedly *close* to on point. But what the Court finds distinguishable here is that this case doesn't involve two *robberies*. (If it did, the defendant would still be serving a life sentence for murder during a crime of violence.) Instead, it involves *attempted* robberies. Or, more to the point: What the defendant and his associates really did was attempt the *same* robbery twice.

And seen in that light, § 3D1.2(b) is squarely on point, definitionally providing that offenses "involve substantially the same harm" when they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." That *plain* language, in fact, couldn't be more appropriate. Contrary to the defendant's argument, there's not much to suggest that the July 30 attempt was an "instance of fear" for the intended victims—there's little to no evidence in the record showing that. And the "risk of

- 4 -

harm" on July 30 was the same risk as on July 31. . . except that on July 31, that risk was tragically realized.

To summarize: § 3D1.2 cmt. n.4 is distinguishable here, because it's premised on two completed robberies, not two attempts at the same robbery. And that leaves the Court with the plain language of § 3D1.2(b), which appears to the Court—given its *extensive* familiarity with this case—to be squarely applicable. Accordingly, the Court will overrule the defendant's objection.

3. Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4. If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 1st day of December, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge